IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-CV-1957

**CIBER, INC.,**

      **Plaintiff,**

  v.

**FEDERAL INSURANCE COMPANY; and GREAT NORTHERN INSURANCE COMPANY,**

      **Defendants.**

## COMPLAINT AND JURY DEMAND

Plaintiff Ciber, Inc. ("Ciber") states as follows:

## PARTIES

1.  Ciber is a Delaware corporation with its principal place of business in Greenwood Village, Colorado.

2.  Defendant Federal Insurance Company ("Federal") is part of the Chubb Group of Insurance Companies, offers insurance policies throughout the United States, including Colorado, and upon information and belief is an Indiana corporation with its principal place of business in New Jersey.

3.  Defendant Great Northern Insurance Company ("Great Northern") is part of the Chubb Group of Insurance Companies, offers insurance policies throughout the United States, including Colorado, and upon information and belief is an Indiana corporation with its principal place of business in New Jersey.

## JURISDICTION AND VENUE

4. There is complete diversity between the Plaintiff and Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs. As discussed in more detail below, the damages asserted are based on the cost of defense, the cost of indemnity, and bad faith.

5. This Court has jurisdiction over this action pursuant to diversity of citizenship jurisdiction under 28 U.S.C. §1332.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Federal and Great Northern (collectively "Chubb") conduct business in, and may be found in, this district, Ciber purchased the subject Policies, as defined below, in this district, and a substantial part of the events or omissions giving rise to this lawsuit occurred in this district.

## GENERAL ALLEGATIONS

7. Ciber incorporates by reference each and every allegation contained in paragraphs 1 through 6 of this Complaint.

8. This is an action for declaratory judgment, breach of contract, breach of the duty of good faith and fair dealing, and punitive damages.

## THE POLICIES

9. Ciber purchased from Great Northern a Customarq General Liability Insurance Policy ("GL Policy"), No. 3578-86-66, with policy periods from July 1, 2013 to July 1, 2016.

10. The GL Policy provides to Ciber coverage limits of $1 million each occurrence, $2 million in the aggregate, $1 million for products-completed operations, and $1 million for advertising and personal injury.

11. Ciber purchased from Federal a Chubb Commercial Excess and Umbrella Policy

2

53552493.3

("Umbrella Policy"), No. 7980-31-19, with policy periods from July 1, 2013 to July 1, 2016.

12. The Umbrella Policy provides to Ciber coverage limits of $20 million each occurrence, $20 million in the aggregate, $20 million for products-completed operations, and $20 million for advertising and personal injury.

13. Chubb has a duty to defend Ciber from any claims or lawsuits that potentially fall within the Policies' coverage.

14. Among other potentially applicable coverages, the Policies provide coverage for "damages that [Ciber] becomes legally obligated to pay by reason of liability . . . for bodily injury or property damage caused by an occurrence."

15. The Policies define "occurrence" broadly as "an accident."

16. The Policies define "property damage" to include both: (1) "physical injury to tangible property, including resulting loss of use of that property;" and (2) loss of use of tangible property that is not physically injured."

17. The Policies require Chubb to "defend [Ciber] against a suit, even if such suit is false, fraudulent or groundless."

**THE UNDERLYING HAWAII DEPARTMENT OF TRANSPORTATION ACTION**

18. On September 2, 2015, Ciber was named as a defendant in an action styled as *State of Hawaii, Department of Transportation v. Ciber Inc.*, filed in the First Circuit Court, State of Hawaii, Case No. 15-1-1726-09.

19. The Complaint in that action ("HDOT Complaint") alleged that Ciber performed work and provided services to the Hawaii Department of Transportation ("HDOT") relating to an enterprise resource planning computer system platform developed by Oracle, known as the Oracle Business Suite.

3

20. The HDOT Complaint alleged causes of action for negligent misrepresentation, declaratory judgment, breach of contract, fraudulent inducement, breach of express warranty, unjust enrichment, fraud, false claims, and breach of the implied covenant of good faith and fair dealing.

21. Among other allegations, the HDOT Complaint alleged that Ciber caused "functional gaps and gaping holes in the system architecture," "a defective and bug-ridden system," and a system that "could not perform simple transactions, could not save basic data, and was brought to a standstill by flashing 'error' messages."

22. The HDOT Complaint also alleged that Ciber caused further property damage in the form of "infrastructure costs, . . . the cost of a replacement system and other damages stemming from Ciber's misconduct."

23. The HDOT Complaint further alleged that Ciber recorded telephone conversations with HDOT and has not produced such recordings, implying that Ciber destroyed copies of telephone records.

24. The HDOT Complaint included allegations that encompass loss of use claims, loss of paper damages, damage to hardware, damage to other programs, and damage to system functions.

25. On September 25, 2015, Ciber filed a lawsuit against HDOT for payment of amounts owing under contracts entered into between Ciber and HDOT, in an action styled as *Ciber Inc. v. State of Hawaii, Department of Transportation et al*, filed in the First Circuit Court, State of Hawaii, Case No. 15-1-1881-09 ("HDOT Action").

26. In October 2015, the court dismissed the HDOT Complaint.

27. On November 16, 2015, HDOT filed an Answer to Ciber's Complaint in the

HDOT Action, and filed a Counterclaim as well ("HDOT Counterclaim").

28. HDOT's Counterclaim contained the same allegations as those set forth in the HDOT Complaint.

29. HDOT's Counterclaim alleges millions of dollars in damages against Ciber, which is significantly more than the $75,000 jurisdictional limit.

30. Specifically, HDOT's Counterclaim alleges that "Ciber owes HDOT millions of dollars in fees that HDOT paid for a worthless computer system that did not meet HDOT's core functional requirements, including FHWA certification. Ciber also owes HDOT for infrastructure costs, thousands of wasted State personnel hours, the cost of a replacement system and other damages stemming from Ciber's misconduct."

31. The Counterclaim further alleges that Ciber has potentially placed in jeopardy "federal appropriations from the United States, which provides HDOT with approximately $170 million in highway payments each year."

32. Ciber has and will continue to expend defense costs relating to HDOT's Counterclaim that alone exceed the $75,000 jurisdictional limit.

33. Chubb has a duty to defend and indemnify Ciber under the Policies for HDOT's Counterclaim, in amounts that far exceed the $75,000 jurisdictional limit.

**CIBER'S NOTICE AND CHUBB'S BAD FAITH DELAY AND DENIAL OF CLAIM**

34. Ciber, through the insurance broker (Lockton), forwarded to Chubb the HDOT Complaint on September 3, 2015 – the day after it was filed.

35. Ciber did not receive a coverage position to its initial notice, and Lockton again requested Chubb's position on October 16, 2015.

36. On November 18, 2015, Lockton forwarded to Chubb the HDOT Counterclaim

5

and reminded Chubb that "[t]he Counterclaims here continue to allege potentially-covered property damage claims and you have not yet ever issued a coverage position letter that I am aware of."

37.  On December 1, 2015, Lockton once again demanded the dilatory coverage position from Chubb, stating that "[w]e all yet await Chubb's coverage determination as to the relevant CGL and CGL-Umbrella policy years with Chubb/Federal."

38.  On December 22, 2015 – more than three months after receiving a copy of the HDOT Complaint – Chubb finally provided a coverage position in which denied any coverage whatsoever, including a defense.

39.  Without providing any actual coverage analysis, Chubb instead simply made the conclusive statement that:

> The allegations in the Counter Claim do not meet the terms of the Insuring Agreement as they do not constitute Bodily Injury or Property Damage caused by an Occurrence nor Advertising Injury or Personal Injury as defined.  The policy also contains exclusions for Expected or Intended Injury, Breach of Contract, Professional Liability, Total, (sic) Damage to Your Product, and Damage to Impaired Property Or Property Not Physically Injured exclusions may apply to limit or preclude any potential for coverage.

40.  Ciber thereafter retained counsel, who sent a letter on April 19, 2016, disputing Chubb's denial of coverage and providing an explanation of Chubb's duty to defend.

41.  On May 6, 2016, Ciber's counsel followed up with Chubb, stating that "[a]s of this date, we have not received a response.  We request, as a matter of professional courtesy, a prompt response to our April 19 letter."

42.  On May 25, 2016, Ciber's counsel again sent a letter to Chubb once again requesting a response to the April 19th letter.

43.  On July 14, 2016, Chubb finally provided a response, denying all coverage based

53552493.3

on erroneous and unreasonable positions that are not supported by the Policies.

44.     Ciber has already incurred at least $360,000 in attorney fees and costs in the HDOT action. Those fees and costs should have been paid by Chubb and significantly exceed the $75,000 jurisdictional limit.

45.     The HDOT action is in the early stages of litigation and start of discovery. The attorneys' fees and expenses will continue to increase, adding to the damages incurred as a result of Chubb's failure to defend.

46.     In addition to the cost of defense, Chubb must also indemnify Ciber for the damages asserted by HDOT which, according to the Counterclaim, includes "millions of dollars in fees that HDOT paid for a worthless computer system that did not meet HDOT's core functional requirements, including FHWA certification. Ciber also owes HDOT for infrastructure costs, thousands of wasted State personnel hours, the cost of a replacement system and other damages stemming from Ciber's misconduct," including placing in jeopardy "federal appropriations from the United States, which provides HDOT with approximately $170 million in highway payments each year."

47.     Chubb's failure to provide a defense or indemnity, along with its existing and continuing bad faith, have exposed it to damages in this case that exceed the Policy limits.

## FIRST CLAIM FOR RELIEF

**(Declaratory Judgment)**

48.     Ciber incorporates by reference each and every allegation contained in paragraphs 1 through 47 of this Complaint.

49.     As set forth above, the Policies provide coverage for the HDOT Counterlcaim, and require Chubb to provide Ciber with a defense. *See Cyprus Amax Minerals Co. v. Lexington*

7

*Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) ("[I]f the alleged facts even potentially trigger coverage under the policy, the insurer is bound to provide a defense").

50. Chubb's refusal to defend, in breach of the Policies, has consequences under applicable law and precludes Chubb from relying on other policy provisions.

51. Chubb's refusal to defend precludes it from denying coverage for Ciber's potential liability in the HDOT Action.

52. This controversy between Ciber and Chubb relates to the Policies and is present, substantial, justiciable, and sufficiently invokes this Court's powers to declare the parties' rights and liabilities.

53. The actual controversy between the parties warranting declaratory judgment includes, but is not limited to, the Policies' coverage for the HDOT Action, Chubb's breach of the duty to defend, and the consequences of Chubb's failure to defend.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

54. Ciber incorporates by reference each and every allegation contained in paragraphs 1 through 53 of this Complaint.

55. The Policies are valid contracts between Ciber and Chubb.

56. The Policies require Chubb to provide Ciber a defense in the HDOT Action.

57. Chubb has refused to provide Ciber a defense in the HDOT Action.

58. Ciber has been damaged by Chubb's breach, including, but not limited to, defense costs incurred in the HDOT Action, which already total at least $360,000 and continue to increase as the HDOT action continues.

59. Chubb must also indemnify Ciber for any potential liability related to HDOT's

8

damage claims which, according to the Counterclaim, consist of millions of dollars.

### THIRD CLAIM FOR RELIEF

### (Breach of the Duty of Good Faith and Fair Dealing)

60. Ciber incorporates by reference each and every allegation contained in paragraphs 1 through 59 of this Complaint.

61. Chubb has a duty of good faith and fair dealing under the Policies.

62. Chubb has breached its duty of good faith and fair dealing as set forth in paragraphs 29 to 38.

63. Chubb denied Ciber a defense at the very time Ciber was most vulnerable and needed the benefits of the Policies it purchased.

64. Chubb failed to conduct an investigation to properly determine Ciber's coverage rights under the Policies.

65. Chubb failed to provide Ciber with a proper coverage determination and analysis.

66. Chubb has continuously and systematically delayed its responses under the Policies to the detriment of Ciber.

67. Chubb's conduct is unreasonable, and Chubb knows or should have known that its conduct is unreasonable or it has deliberately disregarded the fact that its conduct is unreasonable.

68. Chubb failed to give equal consideration to its policyholder's interests in determining coverage under the Policy.

69. Chubb did not have a reasonable basis for denying coverage under the Policy.

70. Chubb did not have a valid basis for refusing to provide Ciber with a defense under the Policy.

71. Chubb compelled Ciber to file this lawsuit to recover the benefits to which it is entitled under the Policy.

72. Chubb's bad faith caused Ciber to be damaged.

73. Ciber has been damaged by Chubb's bad faith.

### FOURTH CLAIM FOR RELIEF

### (Unreasonable Delay or Denial of Benefits)

74. Ciber incorporates by reference each and every allegation contained in paragraphs 1 through 73 of this Complaint.

75. Pursuant to C.R.S. § 10-3-1115(1)(b)(I), Ciber is a first-party claimant seeking an entitlement to benefits owed under the Policy.

76. Chubb is an entity engaged in the business of insurance.

77. Pursuant to C.R.S. § 10-3-1115(1)(a), Chubb shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

78. By refusing to defend and indemnify Ciber for the claim it brought related to the HDOT Action, Chubb has breached its duty not to unreasonably delay or deny payment for Ciber's first-party claim.

79. As a result of Chubb's unreasonable delay, actions, and inactions, Ciber has suffered damages and pursuant to C.R.S. § 10-3-1116(1) and is entitled to recover two times the amount of its covered benefits plus the attorneys' fees and costs it incurs in this litigation.

### **PRAYER FOR RELIEF**

Wherefore, Ciber respectfully requests judgment as follows:

A. A judicial declaration that (1) the Policies provide coverage for the HDOT Action, (2) Chubb has a duty to reimburse Ciber for defense costs and fees incurred in defending

the HDOT Action, (3) Chubb's conduct as described herein breached its duty of good faith and fair dealing under the Policy, and (4) Chubb's conduct as described herein constituted a breach of contract, and (5) Chubb's refusal to defend precludes Chubb from denying coverage under the Policy;

  B. An award against Chubb of actual and compensatory damages, in the amount established by the evidence;

  C. An award against Chubb of two times the amount of its covered benefits provided by the Policy, costs, and attorneys' fees pursuant to C.R.S. § 10-3-1116(1);

  D. For any and all pre-judgment, post-judgment, and moratory interest at the rate applicable under the law; and

  E. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury on all issues so triable.

DATED this 1st day of August, 2016

            Respectfully submitted,

            *S/Stacy Carpenter*
            Stacy A. Carpenter
            Polsinelli, P.C.
            1515 Wynkoop St., Ste. 600
            Denver, Colorado 80202
            Telephone:  303-572-9300
            Facsimile:  720-228-2287
            scarpenter@polsinelli.com

            *Attorneys for Plaintiff Ciber, Inc.*