IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01957-PAB-MEH

CIBER, INC.,

    Plaintiff,

v.

FEDERAL INSURANCE COMPANY and
GREAT NORTHERN INSURANCE COMPANY,

    Defendants.

# ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment Regarding Chubb's Duty to Defend [Docket No. 49] and Defendants' Motion for Summary Judgment [Docket No. 51]. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

Plaintiff Ciber, Inc. is an information technology ("IT") consulting company. Plaintiff's Response to Defendants' Statement of Undisputed Material Facts 1; Docket No. 57 at 4, ¶ 1. Defendant Great Northern Insurance Company ("Great Northern") issued three primary insurance policies to plaintiff that together provided general liability coverage from July 1, 2013 until July 1, 2016 (collectively, the "primary policies"). Defendants' Statement of Undisputed Material Facts ("DSUMF") 6; Docket No. 51 at 8-

---

[1] The following facts are undisputed unless otherwise indicated.

9, ¶ 6. Defendant Federal Insurance Company ("Federal") issued plaintiff three umbrella insurance policies (collectively, the "umbrella policies") that together provided excess coverage for the same periods and used some of the same definitions as the primary policies. DSUMF 13-15, 17-18.[2]

On September 30, 2008, plaintiff entered into a contract with the Hawai'i Department of Transportation ("HDOT") to replace its legacy financial management computer system with a new system (the "project"). Ciber did not successfully complete the project and HDOT terminated the contract. DSUMF 2-3. On September 25, 2015, plaintiff filed a lawsuit against HDOT alleging, in part, that plaintiff had been improperly terminated for default and seeking breach of contract damages. DSUMF 3. *Ciber Inc. v. State of Hawaii Department of Transportation, et al.*, No. 15-1-1881-09 ECN (Haw. 1st Cir. Ct.).

On November 16, 2015, HDOT filed counterclaims against plaintiff (the "HDOT counterclaims"), including breach of contract and fraud. DSUMF 4; Plaintiff's Statement of Undisputed Material Facts ("PSUMF") 10; Docket No. 50 at 3-4, ¶ 10; Docket No. 51-11 at 60, 68. On November 18, 2015, plaintiff tendered HDOT's counterclaims to defendants. PSUMF 13; DSUMF 23. On December 22, 2015, defendants denied coverage. PSUMF 14; DSUMF 24. Plaintiff requested reconsideration of defendants' decision, but was again rebuffed on July 14, 2016. PSUMF 19.

On August 1, 2016, plaintiff filed its complaint against defendants. Docket No. 1.

---

[2] Great Northern is a wholly owned subsidiary of Federal. Docket No. 13. The ultimate parent of both defendants is Chubb Limited, which is why defendants are sometimes collectively referred to in the record as "Chubb." See Docket Nos. 13, 14, 49.

On April 20, 2017, plaintiff filed its motion for partial summary judgment. Docket No. 49. Plaintiff seeks declaratory judgment that defendants have a duty to defend the HDOT's counterclaims. *Id*. at 10. On the same day, defendants filed their motion for summary judgment, seeking summary judgment on all of plaintiff's claims. Docket No. 51.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment*. Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111,

3

1115 (10th Cir. 2001) (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

## III. ANALYSIS

### A. Duty to Defend

Under Colorado law,[3] the duty to defend is separate and distinct from an insurer's obligation to indemnify its insured. *See Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1086 n.5 (Colo. 1991). While "[t]he duty to indemnify relates to the insurer's duty to satisfy a judgment entered against the insured, . . . [t]he duty to defend concerns an insurance company's duty to affirmatively defend its insured against pending claims." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (internal quotations and citations omitted). As noted by the Colorado Supreme Court,

> [T]he duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage, but the duty to indemnify does not arise unless the policy *actually* covers the alleged harm. Where there is no duty to defend, it follows that there can be no duty to indemnify. However, where there is a duty to defend, there is not necessarily a duty to indemnify.

*Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996) (emphasis in original, citation omitted).

---

[3] The parties appear to assume that Colorado law applies. *See, e.g.,* Docket No. 49 at 8; Docket No. 51 at 3. Finding no reason to apply the law of a different jurisdiction, the Court concurs and will apply Colorado law. *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

4

"As a general rule under Colorado law, an insurer's duty to defend an insured is triggered solely on the basis of the allegations made within the four corners of the complaint, read against the insurance policy." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 960 (10th Cir. 2011); *see also Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 829 (Colo. 2004). To show that the insurer had a duty to defend, "the insured need only show that the underlying claim may fall within policy coverage." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo. 1999) (internal citations and quotations omitted). To defeat a duty to defend, an insurer bears a "heavy burden." *Hecla Mining*, 811 P.2d 1089. The insurer must establish that "there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Id.* at 1090. Where policy exclusions are implicated, "the insurer bears the burden of establishing that 'the allegations in the complaint are solely and entirely within the exclusions in the insurance policy.'" *Cotter Corp.*, 90 P.3d at 829 (citation omitted). Accordingly, where "there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *City of Littleton*, 984 P.2d at 613-14. If the underlying complaint includes more than one claim, a duty to defend against all claims asserted arises if any one of the claims arguably is a risk covered by the relevant insurance policy. *Horace Mann Insurance Co. v. Peters*, 948 P.2d 80, 85 (Colo. App. 1997) (citation omitted). The existence of a duty to defend against a particular claim is a question of law. *See Bumpers v. Guar. Trust Life Ins. Co.*, 826 P.2d 358, 360 (Colo. App. 1991); *see also Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639 (Colo. App. 2007).

The interpretation of an insurance policy is a legal question. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990). Clauses or phrases should not be viewed in isolation; rather, a policy's meaning must be determined by examining the entire instrument. *Huizar*, 52 P.3d at 819. Policy provisions that are clear and unambiguous should be enforced as written. *Chacon*, 788 P.2d at 750. Where a term in an insurance policy is ambiguous, i.e., is susceptible to more than one reasonable interpretation, the Court will construe the term against the drafter and in favor of providing coverage to the insured. *Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010).

### 1. Property Damage

The Court first considers the parties' arguments concerning whether the HDOT counterclaims allege property damage covered under the policies. The primary policies and the umbrella policies use the same definition of the term "property damage":

• physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

• loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

DSUMF 18; Docket No. 51-2 at 33; Docket No. 51-5 at 29.[4]

Plaintiff argues that the HDOT counterclaims fall within the primary and umbrella policies' property damage coverage. Docket No. 49 at 1-2. Plaintiff claims that HDOT "alleged damages to its computer system and infrastructure" and argues "that the relevant policy provisions here give rise to a duty to defend claims arising out of 'loss of use' and 'physical damage' related to computers." *Id*. at 1.

### a. *Loss of Use*

The HDOT counterclaims allege that the attempted rollout of the new software system designed by plaintiff was an "abysmal failure." Docket No. 51-11 at 49, ¶ 93. In particular, HDOT alleged that the system "could not perform simple transactions, could not save basic data and that was brought to a standstill by flashing 'error' messages." *Id*. While plaintiff argues that these allegations state a claim for property damage because they allege a "loss of use" of tangible computer systems, the HDOT counterclaims leave no doubt that HDOT's theory of recovery is based on plaintiff's new software's inadequacies, not on losing the use of tangible computer systems. *See* Docket No. 49 at 7 (citing *Eyeblaster, Inc. v. Fed. Ins. Co.*, 613 F.3d 797, 802 (8th Cir. 2010)). The HDOT counterclaims allege that the system plaintiff contracted to provide was never functional. *See, e.g.*, Docket No. 51-11 at 28, ¶ 15 (alleging plaintiff's work resulted in a "worthless computer system that did not meet [H]DOT's core functional requirements") and at 49, ¶ 96 (alleging that the plaintiff's software failed its final test

---

[4] An "occurrence" is defined by the policies as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Docket No. 51-2 at 31; Docket No. 51-5 at 27.

and, "[s]hortly thereafter, Ciber began to reduce its staffing on the Project"). Although HDOT claims that its "staff spent hundreds of hours reviving and updating the legacy [computer] system" due to the failed rollout of the replacement system, there are no allegations that HDOT lost use of the legacy system or that the legacy system was damaged. Docket No. 51-11 at 49, ¶ 93. By contrast, in *Eyeblaster,* the plaintiff lost the ability to use his computer systems because, after the installation of new software, the computer system no longer functioned as it had before. *Eyeblaster, Inc.*, 613 F.3d at 802. Analyzing a similar provision to the one at issue in this case, the court found that the allegations against the insured stated the loss of use of tangible property because the plaintiff "allege[d] his computer was 'taken over and could not operate,' 'froze up,' and would 'stop running or operate so slowly that it will in essence become inoperable.'" *Id*.; *see also Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.*, 2000 WL 726789, at *2 (D. Ariz. Apr. 18, 2000) (finding a loss of use where a power outage caused an existing data center to stop functioning as it had previously). Because the HDOT counterclaims do not allege any loss of use of HDOT's legacy computer system or any computers or hardware, the Court finds that the allegations fall outside the loss of use provision of the policies' definition of "property damage."

### b. Physical Injury

The HDOT counterclaims similarly do not allege any physical injury to its computer systems. Plaintiff emphasizes that HDOT claimed damages for "infrastructure costs." Docket No. 51-11 at 28, ¶ 15. Plaintiff argues that infrastructure "consists of hardware, software and network." Docket No. 49 at 7. Plaintiff also notes that HDOT alleged that plaintiff's system was "'defective and bug-ridden'" and argues

8

that this "loss of programming and custom configurations" constitutes physical injury. *Id*. at 8 (quoting Docket No. 51-11 at 27, ¶ 14). These two isolated references do not constitute physical injury in the context of the HDOT counterclaims. The references to defective and bug-ridden refer to the software, *see* Docket No. 51-11 at 37-38, ¶ 47 ("bug-ridden code"), and there is no allegation that the defects or computer bugs physically damaged HDOT's hardware. Likewise, while plaintiff is correct that the term "infrastructure" can encompass hardware in certain contexts, there is no indication that it refers to anything other than software in the HDOT counterclaims, which relate solely to a project consisting of the "design, configuration and implementation of [a] software platform." Docket No. 51-11 at 25, ¶ 2. Examining the allegations within the four corners of HDOT's counterclaims, the Court finds that there is "no factual or legal basis on which" defendants "might eventually be held liable to indemnify the insured" based on the policies' property damage coverage. *Hecla Mining*, 811 P.2d 1090. Accordingly, the Court will deny plaintiff's motion for partial summary judgment and grant defendants' motion for summary judgment as to plaintiff's claim regarding a duty to defend.

Because the Court finds that there is no coverage for HDOT's counterclaims, the Court need not reach the issue of whether HDOT alleged an occurrence or whether the policies' exclusions apply. *See United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 960 (10th Cir. 2011) (declining to address the applicability of a statute after determining that the insurer had no duty to defend).

### B. Plaintiff's Remaining Claims

Defendants argue, and plaintiff does not contest, that where there is no coverage

there can be no duty to indemnify and no bad faith in denying coverage. Docket No. 51 at 20 (citing, e.g., *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 300 (Colo. 2003), and *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 516-17 (Colo. 1996)); *see also* Docket No. 57. The Court agrees and will grant defendants' motion for summary judgment as to plaintiff's remaining claims. *See Wardcraft Homes, Inc. v. Employers Mut. Cas. Co.*, 70 F. Supp. 3d 1198, 1212-13 (D. Colo. 2014).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment Regarding Chubb's Duty to Defend [Docket No. 49] is **DENIED**. It is further

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 51] is **GRANTED**. It is further

**ORDERED** that judgment shall enter in favor of defendants and against plaintiff. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED March 5, 2018.

                                                             BY THE COURT:

                                                      s/Philip A. Brimmer
                                                      PHILIP A. BRIMMER
                                                      United States District Judge